**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Nina Y. Wang**

Criminal Case No. 23-cr-00074-NYW-1

UNITED STATES OF AMERICA,

    Plaintiff,

v.

1.    DEJANE REANIECE LATTANY,

    Defendant.

## ORDER

This matter comes before the Court on the following Motions filed by Defendant Dejane Reaniece Lattany ("Defendant" or "Ms. Lattany"), who is proceeding pro se:[1]

    (1)    Motion for Compassionate Release for Reduction in Sentence/Release to Home Confinement ("Motion for Compassionate Release") [Doc. 81, filed August 27, 2024];

    (2)    Motion for Injunction Pending Appeal/Motion for Injunctive Relief ("Motion for Injunctive Relief") [Doc. 91, filed September 26, 2024];

    (3)    Request for Status Check/Update and Notice to the Court ("Request for Status Update") [Doc. 101, filed March 6, 2025; Doc. 102];[2] and

---

[1] Because Ms. Lattany proceeds pro se, the Court construes her pleadings liberally, but does not and cannot act as her advocate, *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991), and applies the same procedural rules and substantive law to Ms. Lattany as to a represented party, *Murray v. City of Tahlequah*, 312 F.3d 1196, 1199 n.3 (10th Cir. 2008).

[2] This Request for Status Update was filed under Level 1 Restriction because it contains unredacted BOP health records for Ms. Lattany. [Doc. 101]. Doc. 102 is the public entry on the docket for Doc. 101. Because Ms. Lattany does not seek any unique relief pursuant to her Request for Status Update, but rather simply seeks an update to her

(4) Notice to the Court [Doc. 108, filed May 5, 2025].[3]

In the Motion for Compassionate Release, Ms. Lattany seeks early release from Bureau of Prisons ("BOP") custody. [Doc. 81]. The Government opposes Ms. Lattany's Motion for Compassionate Release. [Doc. 86]. The United States Probation Office also filed a Response to Defendant's Motion for Compassionate Release. [Doc. 85]. In the Motion for Injunctive Relief, Ms. Lattany seeks to be released from BOP custody pending the Court's adjudication of her Habeas Petition and her Motion for Compassionate Release. [Doc. 91]. These Motions are ripe for review and the Court considers them below.

## BACKGROUND

On March 3, 2023, Ms. Lattany was charged by Information with one count of wire fraud pursuant to 18 U.S.C. § 1343. [Doc. 1]. She appeared before the Court for a Change of Plea hearing on April 26, 2023 at 1:00 p.m., during which the Court advised her of her constitutional rights and the consequences of pleading guilty. [Doc. 12; Doc. 60].[4] After a robust colloquy with the Court, Ms. Lattany indicated that she did not have

---

pending Petition brought pursuant to 28 U.S.C. § 2255 and her instant Motion for Compassionate Release, the Court respectfully **DENIES** the Request for Status Update [Doc. 101; Doc. 102] **as duplicative**.

[3] This Notice to the Court was filed under Level 1 Restriction because it contains unredacted BOP health records for Ms. Lattany. [Doc. 108]. Because Ms. Lattany does not seek any unique relief pursuant to her Notice to the Court, but rather simply seeks an update to her pending Petition brought pursuant to 28 U.S.C. § 2255 and her instant Motion for Compassionate Release, the Court respectfully **DENIES** the Notice to the Court [Doc. 108] **as duplicative**.

[4] The Court cites to an official transcript for the Change of Plea hearing. [Doc. 60]. However, it cites to a preliminary nonpublic version of the hearing transcript for the Sentencing hearing ("Sentencing Tr."). Accordingly, there may be some variations with respect to page numbers, line numbers, or specific language should an official transcript be ordered and prepared for the Sentencing hearing.

2

any questions, [Doc. 60 at 22:16–18]; she was satisfied with the representation that Mr. Flores-Williams had provided to her, [*id.* at 22:23–23:1]; and she believed that he had fully advised her with respect to her case, [*id.* at 23:2–4]. She then withdrew her plea of not guilty, pleaded guilty, and was adjudged guilty of Count I of the Information, charging her with wire fraud in violation of 18 U.S.C. § 1343 based on her fraudulent applications for, and receipt of funds from, the Paycheck Protection Program and Economic Injury Disaster Grants promulgated in response to the COVID-19 pandemic. ("COVID-19 Relief Funds"). [Doc. 13 at 7–13; Doc. 60 at 23:5–25:23, 14:11–17:24]. It is undisputed that Ms. Lattany ultimately stole over $ 3,000,000 that she used, in part, to purchase at least a residence, a Hummer luxury vehicle, and to pay off her existing credit card debt. [Doc. 13 at 2, 12].

Ms. Lattany then appeared for her Sentencing hearing on August 15, 2023. [Doc. 25]. The Parties filed no objections to the Presentence Investigation Report, including but not limited to the advisory guideline calculations, and the Court found that the applicable advisory guideline calculation was 24, with a criminal history category of II,[5] resulting in an advisory sentencing guideline range of 57–71 months' imprisonment. [Sentencing Tr. at 3:5–8, 4:5–15]. In her Sentencing Memorandum, Ms. Lattany, through counsel, advocated for a sentence of incarceration of 45 months. [Doc. 19 at 3]. The United States advocated for a sentence of incarceration of 51 months. [Doc. 24 at 1]. The United States Probation Office recommended a sentence of 48 months'

---

[5] On May 22, 2023—between the execution of her Plea Agreement and the Change of Plea hearing on April 26, 2023 and her Sentencing Hearing on August 15, 2023—Ms. Lattany pleaded guilty and was convicted of a felony in state court. [Doc. 22 at 13]. Accordingly, her Criminal History score changed from the estimate of category I to category II.

3

incarceration. [Doc. 22-1 at 1]. After argument by counsel and allocution by Defendant, this Court sentenced Defendant to 48 months' imprisonment, to be followed by three years of supervised release. [Doc. 25 at 2; Doc. 27].

After granting two extensions, *see* [Doc. 41; Doc. 44], the Court ordered Defendant to self-surrender to federal custody on November 30, 2023, *see* [Doc. 45]; *see also* [Doc. 53 (permitting Ms. Lattany to self-surrender in Denver, Colorado)]. Ms. Lattany subsequently filed a Motion to Vacate, Set Aside, or Correct Sentence Pursuant to 28 U.S.C. § 2255 (the "Original § 2255 Motion"), which remains pending before the Court. *See* [Doc. 46; Doc. 62].[6] After the Court denied Ms. Lattany's request for continued release pending resolution of the Original § 2255 Motion, *see* [Doc. 55; Doc. 56], Defendant surrendered to federal custody on November 30, 2023, where she remains in the custody of BOP. Since that time, Ms. Lattany has filed the instant Motion for Compassionate Release and Motion for Injunctive Relief—both seeking immediate release from the BOP. The Government concedes that she has exhausted her administrative remedies as to the relief she seeks through the instant Motion for Compassionate Release. [Doc. 86 at 2 n.1].

## ANALYSIS

### I.   Injunctive Relief

#### A.   Pending Adjudication of Habeas Petition

Though filed after her Motion for Compassionate Release, this Court first turns to Ms. Lattany's Motion for Injunctive Relief, [Doc. 91], which seeks release pending the

---

[6] On February 5, 2024, Ms. Lattany filed an "Amended 28 U.S.C. § 2255 [Motion]," [Doc. 62], which this Court construes as a supplement to the Original § 2255 Motion. The Court refers to these two documents collectively as Ms. Lattany's "Habeas Petition."

4

Court's adjudication of her Habeas Petition and her Motion for Compassionate Release. Previously, this Court noted that in the context of her request to be released pending the adjudication of her Habeas Petition, the United States Court of Appeals for the Tenth Circuit ("Tenth Circuit") has recognized that a federal court may release an inmate on bond pending a determination if the inmate demonstrates either "exceptional circumstances" or "a clear case on the merits of the habeas petition." *See Pfaff v. Wells*, 648 F.2d 689, 693 (10th Cir.1981);[7] [Doc. 56]. In support of her Motion for Injunctive Relief, Ms. Lattany reiterates her arguments that her former counsel rendered ineffective assistance of counsel; challenges her BOP classification and placement; and lists her various medical conditions. *See* [Doc. 91].

Without prejudging the merits of her Habeas Petition, Ms. Lattany has again failed to make a sufficient showing of a clearly meritorious post-conviction case based on ineffective assistance of counsel. While Ms. Lattany now contends that she would not have entered the plea agreement due to her former counsel's advice about sentencing, [Doc. 62 at 2], at the core, there are no new arguments that change this Court's analysis with respect to whether Ms. Lattany has shown a clearly meritorious ineffective assistance of counsel claim. *Compare* [Doc. 55], *with* [Doc. 91], *and* [Doc. 56]. To the extent that Ms. Lattany suggests that her concerns regarding her BOP placement or the conditions of her confinement can form the valid basis of her Habeas Petition brought pursuant to

---

[7] As discussed in its prior Order, *see* [Doc. 56 at 2 n.1], this Court does not construe the Tenth Circuit's case law to require Ms. Lattany to demonstrate both a clear case on the merits of her Habeas Petition <u>and</u> exceptional circumstances, due to the timing of when Ms. Lattany's Original § 2255 Motion was filed. *Compare United States v. Palermo*, 191 F. App'x 812, 813 (10th Cir. 2006) (citing *Pfaff*, 648 F.2d at 693), *with Vreeland v. Zupan*, 644 F. App'x 812, 813 (10th Cir. 2016).

28 U.S.C. § 2255 and thus, release pending its adjudication, respectfully, she is mistaken. Petitions under 28 U.S.C. § 2255 are used to attack the validity of a conviction and sentence and must be filed in the district where the inmate was sentenced. *See Bradshaw v. Story*, 86 F.3d 164, 166 (10th Cir. 1996). Insofar as she contests where she is confined, or the conditions of that facility, those challenges are properly construed as challenges to conditions of confinement and thus must be brought pursuant to *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics*, 403 U.S. 388 (1971). *See United States v. Garcia*, 470 F.3d 1001, 1003 (10th Cir. 2006).

While courts have recognized a serious deterioration of health while incarcerated as an "exceptional circumstance" that can warrant bond pending habeas review, *see Vreeland v. Zupan*, No. 14-cv-02175-PAB, 2023 WL 5485627, at *6 (D. Colo. Aug. 24, 2023) (citing cases); *United States v. Smith*, No. 14-cr-10137-JTM, 2020 WL 3288073, at *1 (D. Kan. June 18, 2020), they have also described this standard as a "high bar," *Heflin v. Black*, No. 1:22-cv-00863-CEF, 2023 WL 5353133, at *1 (N.D. Ohio June 22, 2023) (collecting cases), *report and recommendation adopted*, 2023 WL 5352047 (N.D. Ohio Aug. 21, 2023), and observed that "[t]here will be few occasions where a prisoner will meet this standard," *Vreeland*, 2023 WL 5485627, at *6 (quotation omitted). This Court is not persuaded, even with the additional facts presented by Ms. Lattany, that she has demonstrated exceptional circumstances warranting release pending the resolution of her Habeas Petition. *See King v. Ciolli*, No. 23-cv-00519-CNS, 2023 WL 11196896, at *2 (D. Colo. Sept. 5, 2023). There is also no indication that the BOP cannot adequately treat her various medical conditions. *Cf. Smith*, 2020 WL 3288073, at *4 (denying a motion for release pending habeas review based, in part, of the petitioner's failure to show that he

could not provide adequate self-care or receive adequate medical care within the correctional environment). And to the extent that Ms. Lattany contends that she is not a risk of flight nor a danger to the community, at least one court has observed that this "behavior is expected of all inmates and is in no way exceptional." *See Mahan v. Douglas*, 643 F. Supp. 3d 783, 785 (E.D. Mich. 2022).

### B. Pending Adjudication of Motion for Compassionate Release

In addition, Ms. Lattany cites no authority, nor could this Court find any, that contemplates release of a prisoner pending adjudication of a motion for compassionate release under 18 U.S.C. § 3582(c)(1)(a). *See generally* [Doc. 91]. The United States Sentencing Commission's Policy Statement with respect to compassionate release also does not contemplate release pending the adjudication of a motion for compassionate release. *See* U.S.S.G. § 1B1.13. This Court will not infer such an avenue for relief, particularly when it is unclear how the standard would differ from the one already in place for substantive adjudication of a motion for compassionate release. Rather, this Court turns to Ms. Lattany's Motion for Compassionate Release.

## II. Compassionate Release

Section 3582(c) of Title 18 of the United States Code sets forth a general rule that the "court may not modify a term of imprisonment once it has been imposed[.]" That statute also sets out some exceptions to the general rule, including:

> (A) the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the

>factors set forth in section 3553(a) to the extent that they are applicable, if it finds that--
>
>>(i)  extraordinary and compelling reasons warrant such a reduction.

18 U.S.C. § 3582(c)(1)(A)(i).  This is commonly known as "compassionate release."  *See United States v. Davis*, No. 24-3164, 2025 WL 1000344, at *1 (10th Cir. Apr. 3, 2025).

The Tenth Circuit has recently summarized the procedure for evaluating a motion for compassionate release under 18 U.S.C. § 3582(c)(1)(a) as follows:

>Under § 3582(c)(1)(A), a court may reduce a term of imprisonment if, after considering the factors set forth in section 3553(a) to the extent that they are applicable, it finds that extraordinary and compelling reasons warrant such a reduction and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.  The statute thus creates a three-step test:  a district court must (1) find whether extraordinary and compelling reasons warrant a sentence reduction; (2) find whether such reduction is consistent with applicable policy statements issued by the Sentencing Commission; and (3) consider any applicable 18 U.S.C. § 3553(a) factors and determine whether, in its discretion, the reduction authorized by steps one and two is warranted in whole or in part under the particular circumstances of the case.
>
>To *grant* a motion for compassionate release, the district court must of course address all three steps.  However, if the most convenient way for the district court to dispose of a motion for compassionate release is to reject it for failure to satisfy one of the steps, we see no benefit in requiring it to make the useless gesture of determining whether one of the other steps is satisfied.  Thus, district courts may deny compassionate-release motions when any of the three prerequisites is lacking and do not need to address the others.

*United States v. Bradley*, 97 F.4th 1214, 1217–18 (10th Cir. 2024) (cleaned up).  The weight of authority indicates that, as the defendant and movant, Ms. Lattany carries the burden on her Motion for Compassionate Release.  *United States v. Crespin*, No. 23-2111, 2024 WL 3084972, at *5 (10th Cir. June 21, 2024) (collecting cases); *United States v. Eads*, 749 F. Supp. 3d 1149, 1155 (D. Colo. 2024).

8

Ms. Lattany argues that the Court should grant her compassionate release due to extraordinary and compelling reasons based on (1) severe physical and mental health risks based on her current conditions of confinement; (2) the failure of her facility to provide adequate medical care and protect her from hazardous conditions, including exposure to multiple infectious diseases; (3) her psychological suffering based on her exposure to male inmates with severe criminal backgrounds in light of her prior history of molestation; (4) the failure of the facility to provide meaningful support to help her cope with her grief and trauma over the death of her father while incarcerated; and (5) the need to care for her medically incapacitated grandmother and to care for her four children, including her newborn.  [Doc. 81].  The Government opposes such release, arguing that Ms. Lattany's various medical conditions that are being adequately treated within BOP custody; the speculative risks that an inmate may contract an infectious disease; and her family circumstances do not constitute "extraordinary and compelling circumstances" to justify compassionate release.  [Doc. 86 at 5–13].

Upon review of the record before it and the applicable case law, this Court respectfully finds that Ms. Lattany has failed to establish "extraordinary and compelling circumstances" to justify compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A). First, a review of Ms. Lattany's BOP medical records does not indicate that she has any life-threatening medical condition or any condition that requires specialized medical care that is not being provided.[8]  *Cf.* U.S.S.G. § 1B1.13(b)(1) (setting forth certain medical

---

[8] The Court acknowledges that it is not limited to the United States Sentencing Commission's Policy Statement in determining whether "extraordinary and compelling reasons" exist for the motion for compassionate release filed by Ms. Lattany. *See United States v. McGee*, 992 F.3d 1035, 1050 (10th Cir. 2021).  But this Court finds, as other courts have, the Commission's Policy Statement to be a useful guidepost.

circumstances that constitute extraordinary and compelling circumstances: (1) a terminal illness, (2) a serious medical issue that substantially diminishes the defendant's ability to self-care within a correctional facility, (3) a medical condition requiring long-term or specialized care that is not being provided and without which the defendant risks serious deterioration in health or death, and (4) personal health factors and custodial status that create an increased risk of suffering severe medical complications or death from exposure to an ongoing outbreak of infectious disease). To the contrary, her BOP medical records indicate that she has received extensive health care, including for her chronic conditions of having "a cardiovascular AV Block" and being a "borderline diabetic," and postpartum care after the delivery of her newborn that was memorialized as having "[n]o complications related to birth or post-delivery." *See generally* [Doc. 87-1; *id.* at 21]. And while Ms. Lattany may wish to have different medical care, the mere desire to have such medical care is not an extraordinary or compelling reason for a sentence reduction.

Second, to the extent that Ms. Lattany argues that exposure to communicable diseases (such as "COVID, MRSA, STAPH, hepatitis, strep C, EColi, C-diff and sepsis"), [Doc. 81 at 7], justifies compassionate release without articulating how she has a particular vulnerability to these infectious diseases or her health risk is distinguishable from others, this Court respectfully disagrees based on the weight of authority on this issue,[9] *see, e.g., United States v. Warren*, 22 F.4th 917, 928 (10th Cir. 2022); *Davis*, 2025 WL 1000344, at *1.

---

[9] The Court further notes that sepsis is generally not considered a communicable disease, and MRSA, staph, and hepatitis are generally not transmitted through casual exposure.

Third, while this Court in no way minimizes Ms. Lattany's past trauma and the potentially triggering impact of encountering certain circumstances while incarcerated, this Court is not persuaded that her complaints of anxiety, depression, and panic attacks are sufficiently extraordinary and compelling reasons for compassionate release. *See, e.g.*, *United States v. Ortiz-Cruz*, No. 23-cr-00430-RAM, 2025 WL 289200, at *5 (D.P.R. Jan. 23, 2025) (finding that the defendant's mental health complaints were not extraordinary and compelling reasons for compassionate release); *United States v. Busby*, No. 2:15-cr-00353-GMN-NJK, 2020 WL 3883652, at *3 (D. Nev. July 8, 2020) (finding that the defendant's mental health diagnoses even coupled with the risk of COVID-19 did not constitute extraordinary and compelling reasons for compassionate release).

Fourth, while this Court recognizes that grief and trauma associated with her father's death while incarcerated may be substantial, Ms. Lattany cites no case in which a court has justified compassionate release based on a facility's failure to provide "meaningful care and support" for such grief. *See* [Doc. 81 at 9]. And looking at the record as a whole, this Court concludes that, again, it does not meet the medical circumstances constituting extraordinary and compelling circumstances. *Cf. United States v. Kiel*, No. 13-cr- -00051-LG-RHW-2, 2021 WL 4037839, at *2 (S.D. Miss. Sept. 3, 2021) (finding that the defendant's loss of son and desire to provide care to his remaining family in their time of grief was not considered an extreme family circumstance justifying release).

Fifth, while Ms. Lattany understandably wishes to provide care to her grandmother and four children, that desire does not constitute an "extraordinary and compelling

11

circumstance." There is no indication from the record that Ms. Lattany's grandmother is not receiving care from other family members. In addition, the Court granted Ms. Lattany's request to extend her self-surrender date to permit her to secure care for her minor children, see [Doc. 37; Doc. 41; Doc. 43; Doc. 44], and there is no indication that such care plans—though perhaps not optimal—have changed,[10] see [Doc. 81].

For these reasons, this Court respectfully concludes that Ms. Lattany has not carried her burden to establish extraordinary and compelling reasons justifying compassionate release at this time.

## CONCLUSION

Accordingly, **IT IS ORDERED** that:

(1) The Motion for Compassionate Release for Reduction in Sentence/Release to Home Confinement [Doc. 81] is **DENIED**;

(2) The Motion for Injunction Pending Appeal/Motion for Injunctive Relief [Doc. 91] is **DENIED**;

(3) The Request for Status Update and Notice to the Court [Doc. 101] is **DENIED as duplicative**;

(4) The Notice to the Court [Doc. 108] is **DENIED as duplicative**; and

(5) A copy of this Order shall be sent to:

> Dejane Reaniece Lattany
> Inmate No. 51090-510
> Carswell Federal Medical Center
> P.O. Box 27137
> Fort Worth, Texas 76127

---

[10] Further, it appears that the father of the newborn picked up the newborn after her delivery in custody. [Doc. 87-1 at 24–25].

12

DATED: May 13, 2025

BY THE COURT:

_____
Nina Y. Wang
United States District Judge

13